FILED

2015 Sep-08  PM 04:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| SHERRY LYNN CRAIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 4:14-cv-00297-JHE |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Sherry Lynn Craig ("Craig") seeks review, pursuant to 42 U.S.C. § 405(g), §
205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security
Administration ("Commissioner"), denying her application for Supplemental Security Income
("SSI").  (Doc. 1).  Craig timely pursued and exhausted her administrative remedies. This case is
therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).  The undersigned has carefully
considered the record and, for the reasons stated below, the Commissioner's decision is
**AFFIRMED**.

### I. Factual and Procedural History

Craig was a fifty-four-year-old female at the time of the Administrative Law Judge's
("ALJ") decision.  (Tr. 25 & 123).  Craig completed at least four years of college, (tr. 197), and
obtained a master's degree in physical education, (tr. 51).  Her past work experience includes
employment as a "demo lady," fitness club cleaner, caregiver, and substitute teacher.  (Tr. 161-

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil
Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge
conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 9).

66).

Craig filed her application for SSI on November 19, 2010.  (Tr. 123).  The Commissioner

initially denied Craig's application, (tr. 67), and Craig requested a hearing before an ALJ, (tr. 7-

8).  After a hearing, the ALJ denied Craig's claim on September 28, 2012.  (Tr. 9-30).  Craig

sought review by the Appeals Council, but it declined her request on December 27, 2013.  (Tr. 1-

6).  On that date, the ALJ's decision became the final decision of the Commissioner.  On

February 19, 2014, Craig initiated this action.  (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The

function of this Court is to determine whether the decision of the Commissioner is supported by

substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*,

402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This Court

must "scrutinize the record as a whole to determine if the decision reached is reasonable and

supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as

adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a

preponderance."  *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it

reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the

ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528,

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or
SSI.   However, separate, parallel statutes and regulations exist for DIB and SSI claims.
Therefore, citations in this opinion should be considered to refer to the appropriate parallel
provision as context dictates. The same applies to citations for statutes or regulations found in
quoted court decisions.

531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]   The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

    (1)      whether the claimant is currently employed;
    (2)      whether the claimant has a severe impairment;
    (3)      whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
    (4)      whether the claimant can perform his or her past work; and
    (5)      whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R.

----

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show such work exists in the national economy in significant numbers.  *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Craig did not engage in substantial gainful activity from the application date of November 17, 2010.  (Tr. 14).  At Step Two, the ALJ found Craig has the following severe impairments:  fibromyalgia, osteoarthritis, anxiety, and depression.  (*Id.*).  At Step Three, the ALJ found Craig does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 20).

Before proceeding to Step Four, the ALJ determined Craig's residual functioning capacity ("RFC"), which refers to the most a plaintiff can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined Craig has the RFC to perform light work as defined in 20 C.F.R. 416.967(b), with specified limitations.  (Tr. 21).  She can only occasionally lift and/or carry 20 pounds, and can lift 10 pounds frequently.  (*Id.*).  Further, she can sit six of eight hours or walk six of eight hours; she should never climb ladders, ropes or scaffolds; and

4

she can occasionally climb ramps and stairs or balance, stoop, crouch, kneel, and crawl.  (*Id.*).
Craig must avoid concentrated exposure to workplace hazards such as dangerous machinery and
unprotected heights, and she should also avoid temperature extremes and vibration.  (*Id.*).  She
can maintain attention for two hours at a time, and she can perform jobs that do not require
working in close cooperation with coworkers.  (*Id.*).  She cannot perform jobs that require
interacting with the general public as a job duty but can have incidental, casual, and non-
intensive contact with the general public, and she can understand, remember, and carry out
simple tasks and make simple work-related decisions.  (Tr. 21-22).

At Step Four, the ALJ determined Craig has no past relevant work experience.  (Tr. 24).
At Step Five, the ALJ determined, based on Craig's age, education, work experience, and RFC,
that jobs exist in significant numbers in the national economy that Craig could perform.  (*Id.*).
Therefore, the ALJ determined that Craig has not been under a disability and denied Craig's
claim.  (Tr. 25).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported
by substantial evidence or because improper legal standards were applied, "[t]his does not relieve
the court of its responsibility to scrutinize the record in its entirety to ascertain whether
substantial evidence supports each essential administrative finding."  *Walden v. Schweiker*, 672
F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).
The court, however, "abstains from reweighing the evidence or substituting its own judgment for
that of the [Commissioner]."  *Id.* (citation omitted).

Craig asserts two bases for reversing the ALJ's decision:  (1) the ALJ mischaracterized
her age as a "younger individual," and this mischaracterization informed the ALJ's decision to

5

deny Craig SSI; and (2) the ALJ should have recognized Craig was not only not a "younger individual" but was also at the top of the "approaching advanced age" group and should have categorized Craig as a person of "advanced age."  (Doc. 10 at 2-3).  However, despite this cascade failure, the asserted errors were harmless because substantial evidence supports the ALJ's determination that Craig failed to demonstrate a disability.  *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) ("[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citing *Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983)).

### A.  The ALJ's Error in Miscategorizing Craig's Age Group Was Harmless Error.

In her decision, the ALJ stated Craig's age was fifty-two at the time of her request for SSI.  (Tr. 24).  However, the ALJ failed to correctly identify Craig's age category under the *Medical-Vocational Guidelines* ("the grids").  Instead of placing Craig within the "approaching advanced age" category, as appropriate for a person within the age range of 50-54 years, the ALJ stated Craig, as a fifty-two year old, was a "younger individual age 18-49."  (*Id.*).  This statement is obviously internally contradictory, as someone who is fifty-two does not fall into the age range of 18-49.  Craig should have been placed in the appropriate category on the grid:  "approaching advanced age."[4]

Nevertheless, this error is harmless and does not in and of itself warrant a reversal of the ALJ's decision.  Even if the ALJ had correctly identified Craig's age category as "approaching

---

[4] The ALJ should have stated Craig's age was fifty-four because a plaintiff's age should be measured from the date of the ALJ's decision rather than the date of the initial application or hearing.  *See Crook v. Barnhart*, 244 F. Supp. 2d 1281, 1283 (N.D. Ala. 2003) (quoting *Russell v. Commissioner of Social Security*, 20 F. Supp. 2d 1133, 1134 (W.D. Mich. 1998) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987))).  However, fifty-four years of age, like fifty-two, is still within the "approaching advanced age" category.

advanced age," the ALJ would still have found that Craig was not disabled.  Under the grid used

in the ALJ's decision, § 202.20, an individual is not disabled if he is a younger individual,

graduated from high school, has no past relevant work, and can perform light work.  20 C.F.R. §

Pt. 404, Subpt. P, App. 2, Table No. 2, § 202.20.  Other than the obvious error of Craig's age

category, she meets the requirements under § 202.20, as she has graduated from high school, has

no past relevant work, and, according to medical testimony, can perform light work.  (Tr. 24).

The corresponding grid rule for someone of Craig's actual age is § 202.13, and it supports the

same result as § 202.20.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Table No. 2, § 202.13.

Section 202.13 states that an individual is not disabled if he is closely approaching advanced age,

has a high school education, no past relevant work, and can perform light work.  *Id.*  As

previously stated, Craig has graduated from high school, has no passed relevant work, and is

cleared to perform light work.  (Tr. 24).  Thus, even under the standard of § 202.13, Craig would

not be considered disabled, and her claim for SSI would be due to be dismissed.

As there would be no substantive change in the ALJ's ruling if the correct grid rule had

been applied, the error is harmless and does not warrant a reversal.  Moreover, the ALJ did not

ultimately rely on the grids, as addressed more fully below.

## B.  The ALJ's Failure to Identify and Consider Craig's Age as a Borderline Situation Was Also Harmless Error.

While the ALJ was not obligated to categorize Craig as being of "advanced age," she was

obligated to at least consider the possibility of removal to the higher age category.  If a plaintiff's

age is considered borderline, then an ALJ must determine whether it would be more appropriate

to use the plaintiff's chronological age or to apply the next highest category under the grid rules.

*Crook v. Barnhart*, 244 F. Supp. 2d at 1283.  To identify a borderline situation that might merit

such application, an ALJ will apply a two-part test, considering first whether the plaintiff is

within a few days or months of the next age bracket, and then determining whether an adjustment to the next bracket would alter the outcome in the case. *Id.* (quoting *Russell*, 20 F. Supp. 2d at 1135 (citing Appeals Council Interpretation II-5-302(A) (effective Nov. 2, 1993))). If both answers are "yes," "the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age." *Id.*

The ALJ is not required to automatically adjust the age bracket simply because a plaintiff is close to reaching it and the adjustment would change the outcome, *id.* ("Use of the higher age category is not automatic."), and need not explain her decision to stay with the original age bracket, *see Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 403 (6th Cir. 2008) (holding that there is no "per se procedural obligation to address explicitly a claimant's borderline-age situation in every borderline case"); HALLEX II-5-3-2[5] (stating that a judge "need not explain his or her use of the claimant's chronological age"). However, in a borderline situation, "according to Interpretation II-5-302(A), it must be determined which category to use, carefully avoiding a 'mechanical' application of the Regulations § 404.1563(a)." *Crook*, 244 F. Supp. 2d at 1283. Here, the ALJ did not have to discuss her reasoning for not adjusting to "advanced age." Nor was she required to automatically adjust to the "advanced age" category simply because Craig was two months from reaching that age group. However, since the ALJ determined Craig's age made her a "younger individual," she clearly did not recognize that Craig's age presented a borderline situation between "approaching advanced age" and "advanced age" and, therefore, could not have made a determination whether it was more appropriate to use the higher age category. The question then is whether the ALJ's error in miscategorizing Craig's chronological

---

[5] As of July 16, 2015, the cited portion of the Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX) could be viewed at http://www.ssa.gov/OP_Home/hallex/II-05/II-5-3-2.html.

age group—and thereby failing to determine the appropriate age group for a borderline case—affected the result or was merely harmless error.

On this question, the Commissioner cites *Miller v. Commissioner of Social Security*, 241 F. App'x 631, 636 (11th Cir. 2007),[6] for the proposition it is harmless error. (Doc. 12 at 9). The *Miller* court noted that, under the five-step sequential evaluation process, the ALJ may not always exclusively rely on the grids but, "where a claimant is unable to perform a full range of work at a given functional level," should rely on a VE to establish job availability. 241 F. App'x at 635. The ALJ in *Miller* determined that, under the grids, the plaintiff was not disabled but, because the plaintiff's ability to perform light work was impeded by further limitations, a VE's testimony was necessary. *Id.* The plaintiff did not challenge the ALJ's findings regarding his RFC or the conclusion he could not perform a full range of light work; therefore, because the VE testified there were three types of jobs in significant numbers in the national economy that a person with that RFC could perform, substantial evidence (i.e., the VE's testimony and the RFC) supported the ALJ's decision. *Id.* "As such, the ALJ's decision was not made in reliance upon the grids and, thus, a determination of whether [the plaintiff] was a person of advanced age or closely approaching advanced age was not necessary." *Id.*

Like the ALJ in *Miller*, the ALJ here did not rely exclusively on the grid rules in her decision but instead relied on the vocational expert's testimony in finding Craig was not disabled. (Tr. 25). As discussed in the previous section, although the ALJ consulted the wrong grid (§ 202.20) in determining Craig was "not disabled," the result would have been the same had she consulted the correct one (§ 202.13). Having found Craig "not disabled" under the grids, the ALJ determined that, because Craig had additional limitations on her ability to perform light

---

[6] Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

work, she must consult a VE to determine whether substantial jobs existed for a person with Craig's RFC.  (Tr. 25).  The VE testified a person with those limitations would be able to perform requirements of three representative occupations for which there were thousands of jobs in Alabama and in the nation.  (*Id.*; tr. 64-65).  Based on that testimony, the ALJ found Craig not disabled.  (Tr. 25).  Because the ALJ's decision was not made in reliance on the grids, the determination of whether Craig should have been raised to the "advanced age" group, which Craig asserts the ALJ reversibly erred by failing to make, was not necessary.  *See Miller*, 241 F. App'x at 635.

Craig does not address *Miller* but cites three other cases in support of her contention the ALJ should be reversed.  All three are distinguishable.  First, she states this Court in *Crook* held "a disability claimant who was 54 and one-half years of age at the time of the Administrative Law Judge's decision should have been considered a person of advanced age (the next higher age category) under the *Medical/Vocational Guidelines* . . . ."  (Doc. 10 at 9).[7]  The court in *Crook* made that holding but gave no explanation why reversal, instead of remand, was appropriate on this point.  244 F. Supp. at 1284.  Presumably, it was because the court also held the ALJ's RFC to perform a full range of "light work" was contradicted by attending-physician evidence and was due to be reversed and benefits awarded three years even further back.  *Id.* at 1284-85.  In this case, as in *Miller*, the ALJ did not rely on the grids but held, based on a substantially supported RFC and the testimony of a VE, that work was available for a person

---

[7] Craig also asserts *Crook* supports her contention the ALJ mechanically applied the age guidelines, (doc. 10 at 9), but it is unclear how this could be the case since, unlike in *Crook* (in which the ALJ found the plaintiff capable of a full range of light work and therefore ruled him not disabled under the grids), the ALJ here did not rely on the grids but, having found Craig incapable of a full range of light work, relied on a VE to determine whether jobs were available for someone capable of doing what the medical evidence supported Craig being capable of doing.  This is exactly what the Eleventh Circuit requires the ALJ to do to *not* mechanically apply the grids.  *See Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984).

with that RFC.  As a result, unlike in *Crook*, substantial evidence supports the ALJ's ultimate holding and no determination of the age category was necessary.  *See Miller*, 241 F. App'x at 635.

The second case Craig cites is *Garner v. Heckler*, 735 F.2d 1291, 1292 (11th Cir. 1984), for the proposition "a disability claimant age 49 years and 10 months old should have been considered in the next higher or older age category," (doc. 10 at 9); however, the *Heckler* court, in fact, remanded for a determination of whether the higher age category should be applied, 735 F.2d at 1292.  The *Garner* court noted the ALJ had relied on a vocational expert's testimony to determine the proper age category but then applied the age grid mechanically, instead of allowing the plaintiff to proffer evidence of his inability to adapt to new work environments in conformity with the grid.  *Id.*  If the plaintiff could proffer such evidence, the ALJ would have to rely on independent evidence, not the grids.  *Id.* (citing *Reeves*, 734 F.2d at 525-26).  The ALJs in *Miller* and in this case, on the other hand, did not apply the grids, assumed (based on their prior RFC determinations) that the plaintiffs could not adapt as stated in the grids, and based their determinations of disability on independent evidence (from the VE) that work was available to someone with that RFC.

The last case Craig relies on is *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 780 (6th Cir. 1987), for the proposition Appeals Council interpretation II-5-302 "stated in substance that generally establishing an onset date of disability of up to 6 months prior to the attainment of the specified age in the *Medical/Vocational Guidelines* would be reasonable." (Doc. 10 at 9).  *Varley*, however, does not address interpretation II-5-302 and appears to have been confused with *Russell v. Commissioner of Social Security*, 20 F. Supp. 2d 1133 (W.D. Mich. 1998), which was quoted in *Crook* as having quoted *Varley* for another proposition and

which ultimately cited Appeals Council interpretation II-5-302 for the proposition "the Appeals Council believes there is a six month window in which a claimant's situation is 'borderline.'" *Id.* at 1134-35. This is not inconsistent with the findings of the ALJs in *Miller* and in this case that the plaintiffs could find work despite their ages being borderline.

Substantial evidence supports the ALJ's decision the Commissioner proved Step Five of the analysis, that Craig is capable of performing work in the national economy. Therefore, even though the ALJ's previous harmless error in determining the correct age group prevented her from determining whether Craig should have been in an even higher age group, the latter decision was ultimately unnecessary and the failure to make it harmless error.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED** and this action is due to be **DISMISSED WITH PREJUDICE.** A separate order will be entered.

DONE this 8th day of September 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE